UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-cv-02434 KJM AC |
| Plaintiff, | |
| v. | <u>FINDINGS & RECOMMENDATIONS</u> |
| APPROXIMATELY $7,200.00 IN U.S. CURRENCY, and APPROXIMATELY $9,000.00 IN U.S. CURRENCY, | |
| Defendants. | |

Before the court is plaintiff United States of America's July 26, 2021 motion for default judgment against the interest of interests of the Estate of Charles Isles, CJ Jeffries, and Jeff Skorupa ("Isles, Jeffries & Skorupa") to defendants $7,200.00 and $9,000.00 in U.S. currency ("Defendant Currency"). On review of the motion and good cause appearing, THE COURT FINDS AS FOLLOWS:

I. ALLEGATIONS OF THE COMPLAINT

This is a civil action in rem brought by the United States for forfeiture of the defendant funds, which were seized by the U.S. Postal Inspection Service ("USPIS"), on or about October 25, 2019. Compl. ¶ 2. On that day, law enforcement conducted a postal interdiction operation at the West Sacramento Postal Distribution Center in West Sacramento, California. <u>Id.</u> ¶ 5. During

1

the interdiction, law enforcement identified two parcels that bore characteristics consistent with the trafficking of illegal drugs, including handwritten postal labels and no telephone numbers listed for either the sender or the recipient. Id. Each package was addressed to Jeff Skorupa at 719 Griffey Way, Galt, California, with the following return address: CJ Jeffries, 8634 Eastlynn Ave NW, Massillon, Ohio. Id. Law enforcement searched both open and government databases and were unable to identify an individual named "CJ Jeffries" associated with 8634 Eastlynn Ave NW, Massillon, Ohio. Id. ¶ 6.

While the packages were at the Royal Oaks Facility on October 25, 2019, they were presented to a dog trained to detect the odor of narcotics on packages. Id. ¶ 7. The drug dog positively alerted to the presence of the odor of narcotics on each of the packages sent from Massillon, Ohio to Galt, California. Id. Law enforcement performed a records search for relevant information on the parcels' sender and recipient, including connecting either individual—Jeff Skorupa or CJ Jeffries—with the addresses listed on the parcels. Id. ¶ 8. Law enforcement searched government databases and were unable to connect CJ Jeffries with the sender address listed on the parcels. Id. On October 25, 2019, law enforcement went to 719 Griffey Way in Galt, California, the delivery address listed on each parcel. Id. ¶ 9. Law enforcement spoke to Jeff Skorupa, the intended recipient on both parcels, and he gave consent to open each package. Id. Skorupa told law enforcement he was not expecting a package from Massillon, Ohio, did not know anyone named "CJ Jeffries," and did not know anyone from Massillon, Ohio. Id.

After obtaining consent from the recipient, law enforcement opened Package No. 1 and found jeans pants wrapped in plastic with bundles of cash concealed inside one of the pants pockets. The cash totaled $7,200.00—the defendant currency. The currency consisted of 147 $20 bills, making up $2,940.00 of the total, and other denominations of cash, that ultimately totaled $7,200.00. Id. ¶ 10. Inspectors then opened Package No. 2 and found a black fleece jacket with cash concealed in the jacket pockets. The cash from the jacket totaled $9,000.00—the defendant currency. Id. The currency in Package No. 2 consisted mainly of $100 bills, making

////

up $7,900.00 of the $9,000.00.  Id.  Additionally, the parcels did not contain any notes, instructions, or receipts.

## II.   PROCEDURAL BACKGROUND

On December 10, 2020, the undersigned authorized public notice of the action to be given one time for 30 consecutive days on the official internet government forfeiture site www.forfeiture.gov.  Publication in a manner consistent with the Court's order began on December 12, 2020, and ran for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (hereafter "Supplemental Rules").  ECF No. 6 (Declaration of Publication filed with the Court on January 12, 2021).  In addition to providing notice by publication, the United States also caused certain individuals or entities to be served with notice:

  a.  Estate of Charles Isles
  b.  CJ Jeffries
  c.  Jeff Skorupa.

On December 18, 2020, the United States mailed copies of the complaint, application and order for publication, order regarding clerk's issuance of warrant for arrest, warrant for arrest, order setting status conference, standing order, and court notices to CJ Jeffries at 8634 Eastlynn Avenue NW, Massillon, Ohio 44646, by first class mail and certified mail number 7018 0360 0000 6586 7386.  The PS Form 3811 (certified mail "green card" showing delivery of mail) was signed.  The signature on the PS Form 3811 appears to be that of Jarred Slabach who was identified by Postal Inspectors as someone who receives mail at this address.  The first-class package has not been returned.  Bradley Decl. (ECF No. 23-1) ¶ 3, Exhibit A.

On January 26, 2021, Postal Inspector Roxanne LeMaire conducted a follow up search using Thomson Reuters CLEAR, and found no new updated address information for CJ Jeffries.  The name was searched using the address listed on the Express Mail parcel in Massillon, Ohio.  The name of "CJ Jeffries" was not located in the city of Massillon, Ohio or in the state of Ohio.  The name "CJ Jeffries" was not located as residing at 8634 Eastlynn Ave NW, Massillon, Ohio.  This is the same street where Charles Isles' mother lives.  Charles Isles is the person who

submitted a claim to USPIS during the administrative forfeiture of these funds.  For these reasons and others, Ms. LeMaire believes the name "CJ Jeffries" is a fake name used to conceal the true identity of the sender of the two parcels containing the U.S. Currency.  LeMaire Decl. (ECF No. 11-2) ¶ 6.

On January 27, 2021, the U.S. Marshals Service attempted to personally serve the above-listed documents on CJ Jeffries at 8634 Eastlynn Avenue NW, Massillon, Ohio 44646.  The U.S. Deputy Marshal was unable to serve CJ Jeffries and notated that CJ Jeffries does not live at this location.  Bradley Decl. ¶ 4, Exhibit B.  On March 5, 2021, a comprehensive address search of 8634 Eastlynn Avenue, NW, Massillon, Ohio 4464 using Lexis Nexis was conducted.  The address history does not show a CJ Jeffries or anyone with the last name of Jeffries as having ever resided at this address.  Bradley Decl. ¶ 5.

On December 18, 2020, the United States mailed copies of the above-listed documents to Jeff Skorupa at 710 Griffey Way, Galt, California 95632, by first class mail and certified mail number 7018 0360 0000 6586 7393.  The certified mail package and first-class package were returned as "no such number, unable to forward."  Bradley Decl. ¶ 6, Exhibit C.  On January 12, 2021, the U.S. Marshals Service attempted to personally serve the above-listed documents on Jeff Skorupa at 710 Griffey Way, Galt, California 95632.  The U.S. Deputy Marshal was unable to serve Jeff Skorupa and notated the reason as "no 710 address."  Bradley Decl. ¶ 7, Exhibit D.

On February 9, 2021, the United States mailed copies of the above-listed documents to Jeff Skorupa at 719 Griffey Way, Galt, California 95632, by first class mail and certified mail number 7018 0360 0000 6586 7447.  The first-class mailing has not yet been returned.  The U.S. Postal Service attempted to serve the certified mailing on February 10, 2021 and April 19, 2021, but the package was refused by the occupant both times.  The certified mailing was returned on April 27, 2021, as "return to sender, attempted – not known."  Bradley Decl. ¶ 8, Exhibit E.

On February 14, 2021, the U.S. Marshals Service attempted to personally serve the above-listed documents on Jeff Skorupa at 719 Griffey Way, Galt, California 95632.  The occupant advised the Deputy U.S. Marshal that Jeff Skorupa had not lived at this address since 2019.  Bradley Decl. ¶ 9, Exhibit F.  On March 4, 2021, the United States received additional

information from Postal Inspector Roxanne LeMaire regarding Jeff Skorupa, the recipient listed on both parcels that contained the defendant currency.  The information included a phone number for Jeff Skorupa that was listed on the application he submitted to rent a P.O. Box in Galt, California.  Teglia Decl. ¶ 3.

That same day, USAO paralegal Tammy Teglia called Jeff Skorupa and identified herself.  Ms. Teglia told him that the United States had been trying to serve him with notice of a civil forfeiture action regarding some currency seized in two parcels that were addressed to him at 719 Griffey Way, Galt, California.  Mr. Skorupa said they moved out of the home they were renting on Griffey Way and provided Ms. Teglia with the following address we could serve him notice at: P.O. Box 672, Galt, California 95632.  He also told her he had heard that Charles Isles had passed away.  Teglia Decl. (ECF No. 11-3) ¶ 4.

On March 5, 2021, Ms. Teglia called Jeff Skorupa again to ask him if he knew "CJ Jeffries," the purported sender of the two parcels that contained the defendant currency.  Mr. Skorupa said he does not know a "CJ Jeffries."  Ms. Teglia asked him if he believes it was really Charles Isles that sent the parcels to him and he said that he does.  Mr. Skorupa confirmed that he did know Charles Isles.  Charles Isles was not listed as the sender or the recipient on either parcel.  Teglia Decl. ¶ 5.

On March 5, 2021, the United States mailed copies of the above-listed documents to Jeff Skorupa at P.O. Box 672, Galt, California 95632, by first class mail and certified mail number 7019 2280 0000 3237 8035.  The PS Form 3811 (certified mail "green card" showing delivery of mail) was signed on or about March 9, 2021.  The first-class package has not been returned.  Bradley Decl. ¶ 10, Exhibit G.  On December 18, 2020, the United States mailed copies of the above-listed documents to Charles Isles at 3610 Harris Avenue NW, Canton, Ohio 44708, by first class mail and certified mail number 7018 0360 0000 6586 7379.  The certified mail package was delivered on March 1, 2021 to 8633 Eastlynn Avenue NW, Massillon, Ohio 44646, after a change of address form was submitted to the U.S. Postal Service. The PS Form 3811 (certified mail "green card" showing delivery of mail) was signed by Julia Long.  The first-class package has not been returned.  Bradley Decl. ¶ 11, Exhibit H.

1  On January 26, 2021, Postal Inspector Roxanne LeMaire contacted the United States to advise that the Ohio U.S. Marshals Service called her and told her they believed Charles Isles was deceased based on research they had done in preparation to personally serve him. On January 27, 2021, the U.S. Marshals Service attempted to personally serve the above-listed documents on Charles Isles at 3610 Harris Avenue NW, Canton, Ohio 44708. The U.S. Deputy Marshal was unable to serve Charles Isles, and noted on the Process Receipt and Return form that he is deceased. Bradley Decl. ¶ 12, Exhibit I.

On January 26, 2021, USAO paralegal Kim Bradley received a voicemail from Starlett Isles, Charles Isles' mother. In her voicemail Starlett Isles advised that Charles Isles was deceased. Bradley Decl. ¶ 13. On January 27, 2021, a search of the Stark County, Ohio Probate Court records was conducted to confirm Charles Isles death. According to those records, Charles Isles died on November 16, 2020. His mother, Starlett Isles, is listed as the administrator of his estate. Bradley Decl. ¶ 14.

On February 3, 2021, the United States mailed copies of the above-listed documents to the Estate of Charles R. Isles III, c/o Starlett Isles, at 8633 Eastlynn Avenue NW, Massillon, Ohio 44646, by first class mail and certified mail number 7018 0360 0000 6586 7430. This is the same address to which the certified package addressed to Charles Isles was re-routed and delivered on March 1, 2021, as discussed above. According to USPS.com, the certified package was returned on or about May 24, 2021. It was returned as "unclaimed, unable to forward, return to sender." The returned certified package was located in the United States Attorneys Office on June 25, 2021. According to the certified envelope, notice was left for the Estate of Charles R. Isles III, c/o Starlett Isles, regarding the certified package on February 8, 13, and 23, 2021. The first-class mail package was not returned. Bradley Decl. ¶ 15, Exhibit J.

On March 16, 2021, the Clerk entered default against the interests of Jefferies. ECF No. 12. On May 4, 2021, the Clerk entered default against the interests of Skroupa. ECF No. 18. July 19, 2021, the Clerk entered default against the interests of the Estate of Charles Isles. ECF No. 22. Now pending is plaintiff's July 26, 2021 motion for default judgment. ECF No. 23. No opposition to the motion has been filed. The matter was taken under submission. ECF No. 24.

6

////

III.     LEGAL STANDARD

A court has the discretion to enter a default judgment against one who is not an infant, incompetent, or member of the armed services where the claim is for an amount that is not certain on the face of the claim and where (1) the defendant has been served with the claim; (2) the defendant's default has been entered for failure to appear; (3) if the defendant has appeared in the action, the defendant has been served with written notice of the application for judgment at least three days before the hearing on the application; and, (4) the court has undertaken any necessary and proper investigation or hearing in order to enter judgment or carry it into effect.  Fed. R. Civ. P. 55(b); Alan Neuman Productions, Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). Factors that may be considered by courts in exercising discretion as to the entry of a default judgment and as to setting aside a default include the nature and extent of the delay, Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); the possibility of prejudice to the plaintiff, Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); the merits of plaintiff's substantive claim, id.; the sufficiency of the allegations in the complaint to support judgment, Alan Neuman Productions, Inc., 862 F.2d at 1392; the amount in controversy, Eitel v. McCool, 782 F.2d at 1471-72; the possibility of a dispute concerning material facts, id.; whether the default was due to excusable neglect, id.; and, the strong policy underlying the Federal Rules of Civil Procedure that favors decisions on the merits, id.

With respect to default judgments in proceedings that are in rem actions for forfeiture, both the general Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supp. R.") apply, but the latter rules prevail if there is an inconsistency.  Supp. R. A(1).  Supplemental Rule G(1) provides that the rule governs a forfeiture action in rem arising from a federal statute; to the extent that Rule G does not address an issue, Supplemental Rules C and E also apply.  Supplemental Rule G incorporates a common-sense approach to notice grounded in defined and recognized principles of due process of law.  Supp. Rule G, Adv. Comm. Note on 2006 Adoption.  The Advisory Committee Note indicates that the rule was added to bring together the central procedures governing civil forfeiture actions; it also

7

states that the rule generally applies to actions governed by the Civil Asset Forfeiture Reform Act of 2000 (CA FRA) as well as those excluded from it; thus, the intended scope of application is very broad. The rule permits flexibility as to the time of service of any warrant and supplemental process. Id. The provisions for notice incorporate the traditional means of publication and adopt the general principle that notice should be effectuated by means reasonably calculated to reach potential claimants at a cost reasonable in the circumstances, and actual notice precludes a challenge to the government's failure to comply with the specific requirements of the rule set forth in Rule G(4)(b). Id.

## IV.   ANALYSIS

### A. Judgment Sought

The court concludes that the notice given of the judgment sought satisfies Federal Rules of Civil Procedure 55(d) and 54(c), which require that a judgment by default shall not be different in kind from the relief sought, or exceed in amount that prayed for, in the demand for judgment. In this regard, plaintiff expressly sought in the complaint the types of relief sought by the instant application for default judgment, including a judgment of forfeiture of the defendant funds to the plaintiff United States.

### B. Default and Entry of Default

The declarations and the court's own docket demonstrate that no person or entity made a claim or answered the complaint within the requisite thirty-day period for filing a claim under 18 U.S.C. § 983(a) (4)(A) and Supp. R. G(5), and/or within the twenty-one-day period set forth in Supp. R. G(5) for filing an answer thereafter. Default was properly entered against all named interests.

### C. Notice

The Declaration of Publication by plaintiff filed on January 12, 2021 establishes that a notice with the contents required by Supp. R. G(4)(a) was published on the official government internet site for thirty consecutive days as required by Supp. R. G(4)(a)(iv)(c).

As to the potential claimants, the return of service establishes that Skorupa was personally served and personal service was attempted on Isles and Jefferies with the pertinent

documents as set forth above. Therefore, the notice complied with the requirements of Supp. R. G(4)(b).

The undersigned concludes that plaintiff has demonstrated that it has given notice by publication as well as the notice required to be given to potential claimants by Rule G(4).

### D. Legal Sufficiency of the Complaint

#### 1. Standard

A default judgment generally bars the defaulting party from disputing the facts alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state a claim. Alan Neuman Productions, Inc., 862 F.2d at 1392. Thus, well pleaded factual allegations, except as to damages, are taken as true; however, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default. Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987).

Under the CA FRA, which applies to this case, the government must prove by a preponderance of evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Further, if the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the government must establish that there was a substantial connection between the property and the offense. 18 U.S.C. § 983(c)(3).

Supplemental Rules for Certain Admiralty and Maritime Claims Rule G(2) requires that the complaint in a forfeiture action in rem arising from a federal statute be: verified; state the grounds for subject-matter jurisdiction and in rem jurisdiction over the defendant property as well as venue; describe the property with reasonable particularity; identify the statute under which the forfeiture action is brought; and state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

#### 2. The Complaint

The complaint filed in this action was verified. ECF No. 1 at 5.

The bases for jurisdiction are identified as 28 U.S.C. §§ 1345 and 1355(a) (jurisdiction of

civil proceedings commenced by the United States or an agency or officer thereof, and of actions to recover or enforce penalties or forfeitures under acts of Congress, respectively). Compl. ¶ 3.

The bases of venue are identified as 28 U.S.C. §§ 1355 (placing venue for a civil forfeiture action where the acts giving rise to the forfeiture occurred) and 1395 (placing venue for a civil forfeiture proceeding where the property is found). Compl. ¶ 4.

The property is described in the complaint with reasonable particularity.

It is stated that plaintiff proceeds pursuant to 21 U.S.C. § 881(a)(6), and that the defendant funds constitute money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended to be used to commit or facilitate a violation of 21 U.S.C. § 841 *et seq.* Compl. ¶ 12.

In the complaint there are alleged sufficiently detailed facts to support a reasonable belief that the government would be able to meet its burden of proof at trial. The complaint details law enforcement identification of two packages that bore characteristics consistent with trafficking illegal drugs, including hand-written labels and no telephone numbers for the sender or recipient. Id. ¶ 5. A drug detection dog positively alerted to the presence of the odor of narcotics on the each of the packages. Id. ¶ 7. After obtaining consent from the recipient, law enforcement opened Package No. 1 and found jeans pants wrapped in plastic with bundles of cash concealed inside one of the pants pockets. Id. ¶ 10. The cash totaled $7,200.00—the defendant currency. Id. The currency consisted of 147 $20 bills, making up $2,940.00 of the total, and other denominations of cash, that ultimately totaled $7,200.00.

Inspectors then opened Package No. 2 and found a black fleece jacket with cash concealed in the jacket pockets. Id. The cash from the jacket totaled $9,000.00—the defendant currency. Id. The currency in Package No. 2 consisted mainly of $100 bills, making up $7,900.00 of the $9,000.00. Id. Additionally, the parcels did not contain any notes, instructions, or receipts. Id.

These facts support a reasonable inference that the defendant currency was subject to forfeiture as money furnished and intended to be furnished in exchange for a controlled substance or listed chemical, constituted proceeds traceable to such an exchange, and was used and intended

to be used to commit or facilitate a violation of 21 U.S.C. § 841 *et seq.*. The totality of the circumstances reflects that a substantial connection between the defendant funds and a violation of these statutes.

### E. Status of Potential Claimants and Discretionary Factors

Here, no one has claimed an interest in the defendant funds or otherwise responded to the complaint despite being provided adequate notice of these proceedings. It does not appear that there is any risk of mistake or excusable neglect on the part of anyone with a potential interest in the property or of a dispute as to a material fact essential to the government's case. No just cause for delay appears. There does not appear to be any reason why the general policy in favor of a decision on the merits would warrant refusing to enter the requested default judgment.

Accordingly, the court finds that plaintiff has shown its entitlement to a default judgment of forfeiture.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The United States' motion for default judgment and final judgment of forfeiture (ECF No. 23) be granted;
2. That judgment by default be entered against any right, title, or interests of Jeff Skorupa, Estate of Charles Isles, and CJ Jeffries in the defendant funds referenced herein;
3. That a final judgment be entered, forfeiting all right, title, and interest in the defendant funds to the United States, to be disposed of according to law.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

////

////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 9, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE